Commonwealth *v.* Ashley.

COMMONWEALTH *vs.* MICHAEL HOOKER ASHLEY.

Suffolk. May 7, 1998. - June 9, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Evidence,* Expert opinion, Identification, Motive, Photograph, Prior
   inconsistent statement. *Identification. Practice, Criminal,* Argument by
   prosecutor, Instructions to jury, Capital case.

In a murder case, the judge did not abuse his discretion in excluding from
   evidence a psychologist's expert testimony proffered by the defendant
   concerning the capacity of the eyewitnesses to make reliable identifications
   [623-624]; in allowing the Commonwealth to introduce evidence bearing
   on the defendant's motive to kill the victim [624-625]; or in permitting the
   Commonwealth to introduce photographs of the defendant's girl friend's
   vehicle, which was identical to the described getaway vehicle [625-626].
At a murder trial, a statement of the prosecutor in closing argument went
   beyond the evidence; however, on the basis of the evidence, the jury were
   warranted in drawing the inference the prosecutor made for them and no
   prejudice resulted. [626]
At a murder trial, the prosecutor's immoderate remarks in closing argument
   did not create a substantial risk of a miscarriage of justice and his refer-
   ences to the defendant's motive were fair argument. [626-627]
At a murder trial, there was no reversible error in the judge's instructions to
   the jury on their use of prior inconsistent statements [627-628], or on
   identification, including good faith mistake and the Commonwealth's
   burden of proving the defendant's identification beyond a reasonable doubt
   [628-629].

INDICTMENT found and returned in the Superior Court Depart-
ment on June 27, 1994.

The case was tried before *James D. McDaniel, Jr.,* J.

*Peter B. Krupp* for the defendant.

*Joseph M. Makalusky,* Assistant District Attorney (*John P.
Zanini,* Assistant District Attorney, with him) for the Com-
monwealth.

GREANEY, J. A jury convicted the defendant of murder in the
first degree on the grounds of deliberate premeditation and
extreme atrocity or cruelty. Represented by new counsel on ap-
peal, the defendant claims error in (1) the denial of his motion

to permit testimony by his expert witness on the reliability of eyewitness identifications; (2) certain evidentiary rulings pertaining to motive and to eyewitness testimony about the kind of automobile seen at the shooting; (3) remarks made by the prosecutor during his closing argument; and (4) certain jury instructions. We reject these arguments and discern no reason to exercise our authority pursuant to G. L. c. 278, § 33E, to order a new trial or reduce the jury's verdict. Accordingly, we affirm the defendant's conviction.

The jury were warranted in finding the following facts. At midnight on June 27, 1992, Russell Hill, Jr., shot from an automobile Joseph Baskerville and Anthony Kingsbury as the two stood on Algonquin Street in the Dorchester section of Boston. Four days later, on July 1, 1992, at approximately 5:30 P.M., Hill was in the passenger seat of an automobile driven by James Martin. As Martin drove down Gaylord Street, which is one block away from Algonquin Street, he noticed six young black men standing on the porch of a house watching them drive past. Hill recognized one of the men as Moe Black, a friend of Baskerville and Kingsbury. A black Toyota Corolla SR-5 automobile was parked in front of the house. At approximately the same time, Hill's cousin, Charles Hill, Jr., (Charles), saw the defendant walk up Gaylord Street and turn into the yard of Hill's former residence. The defendant was wearing "[a] pair of dark colored jeans . . . a colorful shirt and a hat like a hood, like a sweatshirt drawn over his shoulder."[1]

Martin and Hill proceeded onto Washington Street heading toward Codman Square. Traffic was heavy, and virtually at a standstill. As Martin's vehicle was stopped in the traffic, a black man walked up to the passenger side, raised his arm, and fired three shots from a handgun through the window. All three shots hit Hill in the back, and one of the bullets penetrated his heart. The shooter then ran down Washington Street toward Moultrie Street (which is perpendicular to Washington Street).

Just prior to the shooting, Charles, who by then was standing in front of a Chinese restaurant, saw the defendant emerge from the passenger-side of a mid-sized black automobile. Charles had seen the defendant driving the automobile on previous occasions. The vehicle was approximately twenty yards away from

---

[1]Charles testified on direct and cross-examination that he had not come forward with the identity of the shooter until just before the trial was to begin. It was for the jury ultimately to decide the credibility of his testimony.

Charles and four to five car lengths behind Martin's vehicle. The defendant had changed his shirt and was dressed completely in black. Charles saw the defendant shoot Hill, and then saw the black automobile drive down Moultrie Street. Martin also saw the automobile, recalling that it was the same one that had been parked in front of the house on Gaylord Street.

Boston police officers Anthony Platt and Harold White, who were dressed in uniform, but were operating a "low-profile cruiser," were approximately seven to ten automobile lengths, or thirty to thirty-five yards, behind Martin's automobile at the time of the shooting. The officers heard gunshots, and Officer Platt saw a black man, whom he later identified as the defendant, standing to the side of the traffic in a crouched position. He then saw the defendant with a gun in his hand run down Moultrie Street. The officers chased after the defendant on foot. The defendant did not respond to Officer White's command to stop. Officer Platt saw a black late-model Toyota Corolla pull out of traffic from four to five car lengths in front of the police cruiser and proceed down Moultrie Street. The defendant got into the automobile, which then sped away.

At the time of the incident, the defendant's girl friend, Chenna Webb, owned a black Toyota Corolla SR-5. Officer Platt testified that the numeral five was in the third position of the getaway vehicle's registration number. Webb's registration number was 845CJK.

On returning to Martin's vehicle, the police officers found Hill, who had already died from his wounds, with a loaded .357 handgun and "speed loader" between his feet. This was not the gun used to shoot him, and all three bullets which hit him came from the same gun. The gun that was used to shoot Hill was not recovered. A palm print taken from Martin's vehicle did not match the defendant's palm print, and the age of that print could not be determined.

With respect to the identifications set forth above, the jury heard the following evidence. On November 12, 1992, the two police officers were shown an array of eight photographs, including one of the defendant. Officer Platt was unable positively to identify anyone from the photographs. Officer White selected the defendant's photograph but was "not sure," and also pointed to another photograph. Martin was shown a similar array four days later during which he chose two photographs. He was seventy per cent certain of the defendant's photograph and fifty

per cent certain of the other photograph. Martin indicated that he could identify the perpetrator if he saw him.

On March 16, 1994, Martin and the two police officers viewed a lineup of eight people. The defendant was the only person in the lineup whose photograph was also in the earlier photographic arrays. Martin testified that he was ninety per cent certain in his identification of the defendant. Officer Platt testified that he identified the defendant with nearly "a hundred percent certain[ty]," and Officer White expressed no doubt in his identification of the defendant.[2]

1. An important issue at trial was the admissibility of expert testimony by a psychologist concerning the capacity of the four eyewitnesses (Officers Platt and White, and Martin and Charles) to make reliable identifications. Relying primarily on our decision in *Commonwealth* v. *Santoli*, 424 Mass. 837, 841-844 (1997), the defendant argues that the judge erred in excluding his offer of the psychologist's opinions. We disagree.

In a series of cases in recent years, we have reaffirmed the principle that the admissibility of expert testimony regarding the capacity of eyewitnesses to make identifications is within the trial judge's discretion. See *Commonwealth* v. *DiBenedetto*, *ante* 414, 420 (1998); *Commonwealth* v. *Santoli*, *supra*; *Commonwealth* v. *Walker*, 421 Mass. 90, 96 (1995); *Commonwealth* v. *Hyatt*, 419 Mass. 815, 818 (1995). While we adhered to this position in *Santoli*, we also "provide[d] comments that may assist judges in the exercise of their discretion in this area." *Id.* at 838. The trial in this case occurred more than one year before our decision in *Santoli*, and thus the judge did not have the benefit of those remarks.

At the conclusion of a voir dire of the defendant's proffered expert, the judge stated that he had discretion to admit or exclude the testimony pursuant to *Commonwealth* v. *Hyatt*, *supra*, and we conclude that he did not abuse his discretion in excluding it, even if we take into consideration the comments

[2]On cross-examination of Martin and Officer Platt, the defendant's trial counsel presented them with a document titled "Instructions for Lineup." These forms indicated that at the time the witnesses viewed the lineup, they did not write the defendant's lineup number next to the statement, "If you see the person who was firing the gunshots, please write his number here," but wrote his lineup number next to the statement, "If one or more of these men looks like the person who was firing the gunshots but you are not sure if he is the person, please write each man's number here."

we made in *Santoli*. Although the Commonwealth's case principally relied on the identification testimony of four eyewitnesses, other evidence was presented linking the defendant to the murder. In particular, all four of the eyewitnesses gave similar descriptions of the automobile in which the defendant fled the scene, with three eyewitnesses testifying consistently as to the exact make and model of the vehicle. In addition, the defendant's girl friend owned a vehicle of similar make, model, and color to that described by the three eyewitnesses. Finally, the jury heard evidence as to the defendant's motive for killing Hill. Cf. *Commonwealth* v. *Santoli*, *supra* at 842-843, and cases cited.

Moreover, in *Santoli*, we said that "the judge must conclude that the subject of the opinion is one on which jurors need assistance and can be helped, and will not be confused or misled, by the expert's testimony." *Id.* at 844. Several of the expert's opinions concerned matters which an average juror would be familiar with through experience and common knowledge. The judge observed that "[this] is a simple garden variety identification-type case and it does not require any expertise relative to the capacity of a witness to make an identification."[3] The judge did not abuse his discretion in concluding that the jury would not be materially assisted by the proposed expert testimony.

2. We next address issues pertaining to challenged evidentiary rulings.

(a) The judge allowed the Commonwealth to introduce evidence bearing on the defendant's motive for committing the murder. We reject the defendant's argument that the judge abused his discretion by admitting the evidence.

"[I]f there is evidence of motive, that evidence is admissible." *Commonwealth* v. *St. Germain*, 381 Mass. 256, 271 (1980), quoting *Commonwealth* v. *Borodine*, 371 Mass. 1, 8, cert. denied, 429 U.S. 1049 (1976). "Determination of the weight of such evidence is for the jury, and evidence which merely suggests rather than 'clearly shows' a motive for the crime may still be ruled admissible. There is no requirement

---

[3]We decline to establish a per se rule, urged by the Commonwealth at oral argument, that eyewitness identification testimony fails to meet the standards required for expert opinion evidence, and that expert testimony concerning the reliability of eyewitness identification testimony is not admissible in any circumstances.

that evidence [of motive] be conclusive in order to be admissible." *Commonwealth* v. *St. Germain, supra.*

The jury heard evidence that four days before the murder, two friends of the defendant, Baskerville and Kingsbury, were shot. Hill was killed only moments after he drove past a group of six young black men on the porch of a house on Gaylord Street, who had focused their attention on him, and at least one of whom (Moe Black) was a friend of Baskerville and Kingsbury. Hill was a passenger in an automobile driven by Martin at the time, and had told Martin that he "had shot . . . some of [Moe Black's] friends."[4] A black Toyota Corolla SR-5, which the jury could have found was owned by the defendant's girl friend and had been used on prior occasions by the defendant, was parked in front of the house, and the defendant was seen on Gaylord Street at the same time. From this evidence, the jury reasonably could infer that Hill had shot Baskerville and Kingsbury, that the defendant was friendly with them, that the defendant knew that Hill had shot them, that the defendant had shot Hill, sparing Martin, shortly after Hill had been seen nearby, and that the defendant had done so in order to avenge Hill's assaults. See *Commonwealth* v. *Weichell,* 390 Mass. 62, 73-74 (1983), cert. denied, 465 U.S. 1032 (1984) (jury may infer motive from reasonable inferences); *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 54 (1975) ("It is enough if the inferences drawn from the circumstances be reasonable and possible"). We do not consider the inferences outlined above to be too remote or speculative. The challenged evidence was relevant and was properly admitted. See *Commonwealth* v. *Wilson, ante* 336, 349 (1998).

(b) The defendant argues that the judge erred in permitting the Commonwealth to introduce photographs of Webb's automobile to aid witnesses in identifying the kind of automobile seen at the shooting because the photographs permitted the inference that Webb's automobile was the getaway vehicle. Over an objection by the defendant's trial counsel, Martin and Officers Platt and White were shown photographs of Webb's automobile, and each witness identified that vehicle as the kind of vehicle he had seen at the shooting.[5] The photographs depicted an automobile of the exact make, model, and color of

---

[4]The defendant's trial counsel did not object to the admission of Martin's testimony about Hill's statement.

[5]The judge limited the use of the photographs to aiding the witnesses in identifying the make and model of the automobile seen at the shooting, and

the automobile seen parked in front of the house on Gaylord Street minutes before the shooting, which the defendant had been seen using on prior occasions, and which the defendant was seen using as his getaway vehicle. This evidence was relevant and probative. It was within the judge's discretion to determine that its probative value outweighed any unfair prejudicial effect. See *Commonwealth* v. *Gunter, ante* 259, 263 (1998).

3. The defendant claims that the prosecutor's misconduct in his closing remarks requires a new trial. He argues that the prosecutor misstated certain pertinent facts, appealed excessively to the jury's sympathies, and speculated about facts not in evidence.

The defendant contends that the prosecutor misstated facts surrounding the identification of Webb's automobile as the getaway vehicle which might have prejudiced the jury. The prosecutor argued that "[f]our people identified not only the defendant, but they identified the car. It was a fatal mistake. He used her car." The defendant's trial counsel objected to these remarks.

The prosecutor's reference to the witnesses having identified Webb's automobile as the one used by the defendant at the time of the murder went beyond the evidence. The witnesses who viewed the photographs only testified as to the similarity of the make and model of the automobile depicted in the photographs to the automobile used by the defendant as the getaway vehicle, and they were precluded from testifying that the photographs depicted the actual automobile used by the defendant to flee. Nonetheless, considering all of the evidence relevant to the automobile, the jury were warranted in drawing the inference that the prosecutor made for them. As a result, the defendant could not have suffered any prejudice from the prosecutor's overstatement.[6]

The defendant next argues that the prosecutor improperly

cautioned that the witnesses were precluded from testifying that the automobile in the photographs was the actual automobile they saw. The testimony subsequently elicited by the Commonwealth regarding this issue was limited as required by the judge.

[6]Contrary to the prosecutor's assertion, only three of the eyewitnesses were shown the photographs of Webb's automobile. While the photographs were not shown to Charles, he nonetheless described the vehicle in which the defendant was a passenger prior to the shooting, and then after the shooting, as a "black mid-sized car" which he had seen the defendant driving on previ-

made excessive appeals to the jury's sympathies by emphasizing the impact of the crime on the defendant's father, the Codman Square business area, and the children who were in the area at the time of the shooting. While the prosecutor's remarks may have tended to the immoderate, they do not approach the level of inflammatory prosecutorial argument found in cases relied on by the defendant. See *Commonwealth v. Santiago*, 425 Mass. 491, 497-498 (1997); *Commonwealth v. McLeod*, 30 Mass. App. Ct. 536, 537-541 (1991); *Commonwealth v. Sevieri*, 21 Mass. App. Ct. 745, 754 (1986). Furthermore, the defendant's trial counsel did not object to the remarks or ask for curative instructions. Without a timely objection, our review is limited to whether the comments could create a substantial likelihood of a miscarriage of justice. Assuming that there might have been some excessiveness, we conclude that no such likelihood exists.

Finally, the defendant argues that the prosecutor's references to the defendant's motive constituted improper speculation about facts not in evidence. The defendant's trial counsel did not object to the prosecutor's remarks. The remarks were based on properly admitted evidence of motive. We conclude that the prosecutor fairly argued the evidence, and the reasonable inferences that could be drawn therefrom, concerning the defendant's motive for killing Hill. See *Commonwealth v. Paradise*, 405 Mass. 141, 152 (1989).[7]

4. Nothing in the defendant's arguments concerning the jury instructions provides a sufficient reason to order a new trial.

(a) The defendant challenges the judge's instruction to the jury in his final charge that prior inconsistent statements were admissible for credibility purposes only, and not as substantive evidence. The defendant's trial counsel made a timely objection to the instruction. The statements at issue related to the eyewitnesses' identifications of the defendant.[8] "Normally prior inconsistent statements are not admissible to establish the truth of the matter asserted. . . . Where there is no objection,

---

ous occasions. It is unlikely that had the prosecutor referred to three identifications, as opposed to four, the jury's conclusion would have been different.

[7]For these same reasons, the prosecutor's references to the defendant's motive in his opening statement also were proper.

[8]The statements included that the person who shot Hill was wearing articles that concealed his face, including a hat or sunglasses, and responses to the lineup sheets that indicated less certainty in some of the eyewitnesses' identification of the defendant than indicated in their testimony at the trial.

however, and no request for a limiting instruction, the statements may be considered as substantive evidence." *Commonwealth* v. *Luce*, 399 Mass. 479, 482 (1987). See P.J. Liacos, Massachusetts Evidence § 6.6.2, at 285 (6th ed. 1994 & Supp. 1995); *Commonwealth* v. *Gil*, 393 Mass. 204, 220 (1984).

At the time the statements were introduced, the Commonwealth properly did not object to their admission. The Commonwealth also did not request an instruction limiting their purpose to credibility determinations. The conflicts in the identification testimony served to focus the jury's attention on the reliability of the identifications made by the Commonwealth's witnesses. The jury had to know that the resolution of the identification issue was central to the outcome of the trial, and that the issue had to be decided on all of the testimony. In view of this, we discern no harm to the defendant from the judge's instruction. In particular, the instruction could not have had the effect, as the defendant claims, of "sweeping away a considerable amount of evidence favorable to [him]."

(b) Again relying on *Commonwealth* v. *Santoli, supra* at 845-846, the defendant argues that the judge failed adequately to instruct the jury on the possibility of an honest but mistaken identification because several witnesses expressed confidence in the certainty of their identifications. Because, as stated above, this case was tried before *Santoli* was decided, it was not error for the judge to include in his charge the statement that the jury may consider the strength of an identification. See *Commonwealth* v. *DiBenedetto, supra* at 420; *Commonwealth* v. *Payne*, 426 Mass. 692, 698 (1998); *Commonwealth* v. *Santoli, supra* at 845. The judge properly instructed the jury on identification in keeping with the law at the time.

(c) The defendant contends that he was prejudiced by the judge's instruction concerning the identification testimony. While "[f]airness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it," *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983), the judge was not required to give the specific instruction requested by the defendant. Viewing the judge's identification instructions as a whole, they adequately informed the jury about the possibility of an honest but mistaken identification, and implicitly included the considerations of concern to the defendant. In light of the instructions, the defendant's cross-

examination of the eyewitnesses, and the final argument, the jury were sufficiently apprised of the possibility of a good faith mistake in identification and the Commonwealth's burden of proving the defendant's identification beyond a reasonable doubt.[9]

5. We have reviewed the entire record under G. L. c. 278, § 33E, and conclude that there is no reason to grant the defendant any relief from his conviction of murder in the first degree.

*Judgment affirmed.*

---

[9]The judge's instruction was in accord with the instruction approved in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640-641 (1993). With the exception of informing the jury that they "may take into account . . . the strength of the identification," that instruction remains the standard instruction concerning eyewitness testimony, see *Commonwealth* v. *Santoli*, 424 Mass. 837, 845 (1997); *Commonwealth* v. *Jones*, 423 Mass. 99, 110 n.9 (1996), although a judge, in the exercise of discretion, may alter the instruction. See, e.g., *Commonwealth* v. *Hyatt*, 419 Mass. 815, 819 (1995).