COMMONWEALTH *vs.* WILLIE WILLIAMS.

Suffolk. September 9, 1998. - November 18, 1998.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & MARSHALL, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Argument by prosecutor, Assistance of counsel, Presumptions and burden of proof, Capital case. *Wanton or Reckless Conduct. Assault and Battery. Mental Impairment.*

At a murder trial, there was a substantial likelihood of a miscarriage of justice arising from the judge's erroneous instruction to the jury on the third prong of malice ("plain and strong likelihood that . . . grievous bodily harm would follow"), where it could not be determined on what ground the jury convicted the defendant of murder in the first degree, and where the defendant's assault on the victim was not of an inherently deadly nature; a new trial was required. [385-389]

At the retrial of a murder indictment, the judge should not use "frame of mind" language in defining malice [389]; should make clear that the Commonwealth has the burden of proving the *absence* of provocation [389]; should correctly instruct on the degree of risk required to sustain a conviction for "wanton and reckless" involuntary manslaughter ("high degree of likelihood that substantial harm will result to another") [390]; should give a correct charge on battery manslaughter [390]; and should instruct on the *Cunneen* factors (*Commonwealth* v. *Cunneen,* 389 Mass. 216 [1983]) required to support a verdict based on extreme atrocity or cruelty [390].

At a murder trial, the judge correctly admitted evidence bearing on the question whether the facts known to the defendant were such as would allow him to claim that a reasonable person in his situation would have been provoked to attack the victim. [390-391]

At the retrial of a murder indictment, the prosecutor should refrain from arguing facts not in evidence. [391]

At the retrial of a murder indictment, defense counsel should look into whether the defendant might assert a psychiatric defense. [391-392]

INDICTMENT found and returned in the Superior Court Department on March 26, 1992.

The case was tried before *John J. Irwin, Jr.,* J., and a motion for a new trial, filed on September 27, 1995, was heard by *Thomas E. Connolly,* J.

*James L. Sultan* (*Catherine J. Hinton* with him) for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

FRIED, J. The defendant, Willie Williams, was convicted of murder in the first degree for the beating death of Joseph Celestin. He appeals from the jury verdict and from the denial of his motion for a new trial. The jury charge regarding third prong malice was erroneous. Because this error created a substantial likelihood of a miscarriage of justice, we reverse the judgment of conviction and remand for a new trial.

I

In January, 1992, the defendant's younger sister disappeared from home. After three days had passed, she called their mother, crying hysterically, and reported that she had been kidnapped by a cab driver, held at his residence, and raped. She described her assailant to the defendant in some detail at that time. During a police investigation that failed to apprehend the alleged rapist, she made photographic identifications of him and accompanied police on at least two occasions to view houses that she identified as the house in which she had been held; the defendant accompanied her on one of these occasions. None of the identifications turned out to be correct. Independently, over the course of six weeks after the alleged rape, the defendant observed at least one cab which he believed to be the same as that driven by the rapist and called his mother or the police to report what he had seen.

On March 13, 1992, the defendant stopped at a gasoline station in the Dorchester section of Boston to talk with a friend. Shortly afterward, at the gasoline pump he saw a cab driver, Joseph Celestin, who fit his sister's description of the rapist. He called his sister from a public telephone and asked her to come to the station. When she arrived and was asked whether Celestin was the one who had raped her, she began to cry and told the defendant, "That's him." The defendant then sent her home to tell their mother to telephone the police.

As Celestin prepared to leave the gasoline station, the defendant grabbed him by the collar, saying, "So you like to rape people?" When Celestin responded, "I'm sorry," the defendant took this to be an admission and flew into a "blind rage." He stated, "I'm going to kill you," and began to strike Celestin with his fists, knocking him to the ground and beating him for several minutes. The defendant then backed away from

Celestin and raised his hands in the air; he testified at trial that he had begun to have an asthma attack and was raising his arms to help himself breathe, but others testified that he raised his arms and shouted, as if in victory. Around this time, the defendant's girl friend and another of his sisters arrived at the gasoline station and tried to convince the defendant to stop the beating. He said, "This is the man who raped our sister." After a brief rest, he again began to beat Celestin, and his sister joined in the attack. The defendant and his sister each testified that they struck Celestin only with their fists, but others testified that the defendant kicked Celestin and that his sister sat on the ground with Celestin's head in a "scissors hold" between her legs while the defendant beat him. After a period of several more minutes, the defendant, according to his testimony, suffered another asthma attack, once again halting the beating and raising his arms in the air. He and his sister left the scene at that point, walking to a nearby park.

At the end of the beating, Celestin was on the ground; the defendant and his sister testified that Celestin was on his knees and moving, but other witnesses testified that he was prone and barely conscious. Celestin was bleeding profusely from the mouth and had sustained bruises on his head, hands, and neck, internal bleeding in his head, and a crushed throat. He died twenty-four hours later as a result of blunt head and neck trauma.

## II

The defendant raises numerous objections to the jury instructions provided by the judge. Because he failed to preserve these issues for appeal, we review his claims under G. L. c. 278, § 33E, and consider whether any errors in the charge created a substantial likelihood of a miscarriage of justice.[1] See *Commonwealth* v. *Murphy*, 426 Mass. 395, 401 (1998); *Commonwealth* v. *Eagles*, 419 Mass. 825, 834 (1995); *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993); *Commonwealth* v. *Sires*, 413 Mass. 292, 297 (1992).

Malice aforethought, one of the essential elements of murder, "may be inferred if, in the circumstances known to the

[1] On his motion for a new trial, made before this appeal was heard, the defendant raised only the ineffective assistance of counsel claim discussed below, and as to that, in a case charging murder in the first degree, we review as if the objection had been made at trial.

defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). Malice proved in this way is referred to as "third prong malice."

The defendant correctly complains that the judge erred in instructing the jury that malice may be inferred from an act creating a plain and strong likelihood that death *or grievous bodily harm* would follow.[2] It is well settled that third prong malice "can only be satisfied by proof that 'there was a plain and strong likelihood of *death*'" (emphasis added). *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995), quoting *Commonwealth* v. *Sires*, *supra* at 303 n.14. See *Commonwealth* v. *Brooks*, 422 Mass. 574, 580 (1996).

The first two prongs of malice are intent to kill and intent to cause grievous bodily injury. See *Grey*, *supra* at 470 n.1. The

---

[2]The defendant makes two other arguments concerning the third prong malice charge. First, the judge used the language "could lead to" death, as opposed to the "plain and strong likelihood that death would follow" standard set out in *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987).

Second, the charge inaccurately explained third prong malice's knowledge requirement. Third prong malice has both subjective and objective knowledge components. The proper standard is that, "in the circumstances known to the defendant, a reasonably prudent person would have known that . . . there was a plain and strong likelihood that death would follow the contemplated act." *Id.* The defendant must have actual, subjective knowledge of circumstances that objectively would cause the reasonably prudent person to realize the likelihood of death. The judge at one point failed to state any knowledge requirement, instructing the jury that, "intent to do an act creating a plain and strong likelihood that death or grievous bodily harm would follow" would suffice. He later stated that "malice aforethought includes . . . any specific intent to do an act in circumstances where doing that act they knew or reasonably should have known that the doing of that act could lead to either grievous bodily injury or death." In neither of these instances did he instruct the jury that they must find that the defendant had actual knowledge of the circumstances creating the objective likelihood of death.

These errors, by themselves, would not require a new trial. The judge's use of the terms "could result" in injury or death was outweighed by his use of the "plain and strong likelihood" language at least once in the initial jury instructions and at least twice after the jury requested reinstruction regarding the elements of murder and manslaughter. The judge also stated once that the defendant should know that his conduct "would" result in injury or death, an even higher threshold. The judge's improper use of the objective "should have known" language with reference to third prong malice is outweighed by at least two instances in which he used the proper subjective knowledge language.

jury's failure to specify third prong malice would have been nonprejudicial if they had found malice on either of these grounds. But the basis for the malice finding is unknown because the judge failed to instruct the jury to specify whether their first degree murder verdict was based on deliberate premeditation — which would have required a finding of first prong malice — or on extreme atrocity or cruelty, which is often based on third prong malice. In such a circumstance, where it is "impossible to discern which of the two grounds for conviction the jury selected" in convicting the defendant of murder in the first degree, the verdict must be supportable on both grounds and is vitiated by an erroneous instruction on any of the three prongs of malice. *Commonwealth* v. *Morgan*, 422 Mass. 373, 384 (1996).[3] In this case, where the jury might have based their decision on a theory of extreme atrocity or cruelty, an erroneous third prong malice instruction cannot be deemed nonprejudicial.

At trial, the defendant not only failed to object to the judge's erroneous use of the bodily injury language, but actually requested the language used by the trial judge. Nevertheless, this error created a substantial likelihood of a miscarriage of justice warranting reversal under § 33E. See *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992).

Where the defendant's attack is inherently deadly, the lowering of the third prong malice standard to include grievous bodily injury may be nonprejudicial. See *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 397-398 (1998); *Commonwealth* v. *Mello*, 420 Mass. 375, 390 (1995) (defendant had set fire to an apartment building in the middle of the night, which, under the circumstances known to the defendant, caused a plain and strong likelihood of death). In this case, however, there is a substantial likelihood, based on the evidence presented at trial, that a reasonable jury might have found that the defendant's acts created a plain and strong likelihood of grievous bodily injury, but not a plain and strong likelihood of death. If the jury grounded

---

[3]Almost two years after the defendant's trial, we held in *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995), that, on request, a judge should instruct the jury that they must unanimously agree on a theory of culpability when the defendant has been charged with murder in the first degree. *Berry* was inapplicable at the defendant's trial because it was decided after the jury's verdict and was explicitly held to be prospective. It should be noted, however, that *Berry* will be controlling on retrial and would require such an instruction to be given if requested. *Id.*

their finding of malice on the likelihood of injury, as the charge improperly allowed them to do, the defendant was convicted without the prosecution's having proved each element of murder.

In addressing whether a particular defendant's conduct was inherently deadly, this court has held, at one end of the spectrum, that "a simple blow with the hand administered to a healthy adult" creates no "plain and strong likelihood that death will follow." *Commonwealth* v. *Mahnke*, 368 Mass. 662, 702-703 (1975), cert. denied, 425 U.S. 959 (1976). An attack by means of a deadly weapon, on the other hand, has often been held to be inherently deadly. See, e.g., *Mello, supra.* The facts of this case fall somewhere between the two. The beating was prolonged —certainly more severe than a "simple blow with the hand" — and the victim was visibly and severely injured, yet the attack was not carried out by means of a deadly weapon. The length of the attack is in dispute; estimates provided at trial ranged from six minutes to twenty-five minutes. Evidence presented at trial is also in conflict regarding whether the defendant kicked the victim. A kick with a shod foot may be inherently deadly in some circumstances. See *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969); *Commonwealth* v. *Gordon*, 307 Mass. 155, 158 (1940). We must take the view of the evidence most favorable to the defendant, however, and here, where it is unclear whether the defendant kicked the victim, we must assume he did not. Finally, the condition of the victim apparent during and after the attack is contested; some witnesses testified that the victim was prostrate and barely conscious when the defendant left the scene, whereas others testified that he was on his knees and moving.

Given the state of the evidence, a reasonable jury might have come to the conclusion that, in the circumstances known to the defendant, his actions did not create a plain and strong likelihood of death. It is fairly obvious, however, that the defendant's attack was sure to cause serious bodily injury. In these circumstances, there is a substantial likelihood that the jury, instructed that there is malice if the defendant's actions created a plain and strong likelihood of death or grievous bodily harm, based their finding of malice on the bodily harm portion of the

charge.[4] Given the obvious risk of grievous bodily injury caused by repeated blows with a fist, they were presented with no need to decide the more difficult question whether those blows also were likely to cause death.

### III

We briefly consider the defendant's other complaints for guidance in the event of a retrial.

The defendant argues that the judge, in addition to providing the three prong definition of malice, used the "frame of mind" definition, which was specifically disapproved by this court in *Commonwealth* v. *Eagles*, 419 Mass. 825, 836-837 (1995), and *Commonwealth* v. *Grey*, *supra* at 470 n.1.

In recent cases, this court has consistently discouraged use of the frame of mind definition, which describes malice as a "frame of mind which includes not only anger, hatred and revenge, but also any other unlawful and unjustifiable motive." *Eagles*, *supra* at 836. See, e.g., *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993); *Commonwealth* v. *Torres*, 420 Mass. 479, 484 n.5 (1995). In *Eagles*, *supra* at 836, we stated that the language of the frame of mind definition is "not helpful and ought in the future to be omitted" and that malice should be defined by "reference to the three prongs described in *Commonwealth* v. *Grey*." On retrial, that language should be omitted.

The defendant also challenges the charge regarding the burden of proof on the issue of provocation. The judge, in explaining manslaughter to the jury, twice stated correctly that, if the evidence showed the existence of provocation, the Commonwealth bore the burden of proving its nonexistence in order to sustain a murder conviction. At three other points, however, the judge incorrectly stated that the Commonwealth bore the burden of proving the existence of provocation in order to sustain a manslaughter conviction. The judge clearly erred in instructing the jury that the Commonwealth bore the burden of proving the existence of provocation. See *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998). On retrial, the judge should make clear that the Commonwealth has the burden of proving the absence of provocation.

---

[4]This likelihood is strengthened by the number of times the judge reiterated the bodily injury language during the instruction on malice. He used the words "death or grievous bodily harm," three times; "grievous bodily injury or death," once.

The defendant complains that the judge understated the degree of risk required to sustain a conviction for "wanton and reckless" involuntary manslaughter by stating that conduct that "could lead to substantial harm or death" would suffice. The proper standard is conduct producing a "high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Sneed*, 413 Mass. 387, 394 (1992), quoting *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). This is the instruction that should be given on retrial.

The defendant also challenges the charge regarding involuntary manslaughter by battery. The judge described battery manslaughter merely as an "assault and battery caus[ing] the death of th[e] victim" where the killing was unlawful. For a battery resulting in death to be battery manslaughter, there must have been a " 'battery not amounting to a felony, when the defendant knew or should have known that the battery he was committing endangered human life.' " *Commonwealth* v. *Reed*, 427 Mass. 100, 104 (1998), quoting *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993). This court has also described battery manslaughter as requiring a showing that the "defendant knew, or should have known, that his conduct created a high degree of likelihood that substantial harm would result to another." *Sneed*, *supra* at 393. On retrial, the judge should charge accordingly.

Finally, on retrial, the judge should charge the jury, in accordance with our decision in *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994), that at least one of the factors listed in *Commonwealth* v. *Cunneen*, 389 Mass. 216 (1983), must be present to support a verdict based on extreme atrocity or cruelty.

## IV

The defendant claims that the Commonwealth committed prosecutorial misconduct by both asking questions on cross-examination and making closing statements that indicated that Celestin had not committed rape and that alluded to his sister's prior incorrect identifications of the rapist.

Before trial, the judge ruled that, although he would not in opening statements allow allusion to evidence exculpating Celestin, he might allow the evidence to be introduced later. At the opening of the defendant's case, he ruled that, if the rape became an issue in the defendant's case, the prosecution would be allowed to explore the issue fully on rebuttal. Not until the

Commonwealth called rebuttal witnesses did the judge rule that evidence tending to exonerate Celestin of the accusation of rape would be limited to facts known to the defendant. This ruling was correct, as the prosecutor's questions bore on whether the facts known to the defendant were such as would allow him to claim that a reasonable person in his situation would have been provoked to act as he did.

As to the defendant's complaint about two statements — to which he did not object at trial — made during the Commonwealth's summation, we make these comments.

First, the prosecutor stated: "[W]hen you kill someone before knowing even whether or not it's the right person, whether or not that the [*sic*] person you're accusing was working on the day of the crime, whether or not the person that you're supposedly accusing was not there, whether or not someone else had already been identified" "that's murder." Evidence had been presented that the defendant knew of his sister's mistaken identifications of the rapist. Because this knowledge was relevant, the Commonwealth was entitled to refer to it during closing argument. The phrase, "whether or not the person you're accusing was working on the day of the crime," goes beyond the permissible bounds of this argument, as Celestin's particular alibi was irrelevant. It should not be repeated on retrial.

The second portion of the closing argument to which the defendant objects is the statement that the defendant had been "out looking for cab drivers, stopping cabs." This fact was not in evidence, and no mention of it should have been made.

V

Finally, the defendant argues here, as he did in his motion for a new trial, that he was denied effective assistance of counsel because his trial counsel failed to investigate possible psychiatric defenses, to call expert witnesses to testify on that subject, and to request a mental impairment instruction. He challenges as well the judge's failure to provide a mental impairment instruction.

There can be no error in the judge's failure to provide a mental impairment instruction where no evidence of mental impairment was presented at trial. See *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 549 (1993). An examination of the full trial transcript has revealed nothing requiring a mental impairment instruction.

The defendant argues that the absence of such evidence in the record was due to trial counsel's failure to investigate psychiatric defenses and produce expert testimony. The defendant has not, however, offered any evidence now that, if produced at trial, would have supported the instruction he seeks. Prior to retrial, defense counsel should look into this claimed defense.

Accordingly, the judgment is reversed, the verdict set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*