Botsford, J.
The plaintiffs have moved in limine to exclude the testimony of Dr. Henrietta Sachs, who has been listed as an expert witness for the defendant. No evidentiary hearing has been held to date. Rather, both sides proceeded on a paper record.
Dr. Sachs has been a pediatrician for well over fifty years. She has extensive experience in testing and treating children with elevated blood lead levels, although I gather from the materials before me that she stopped practicing medicine in the 1970s. She has conducted a physical examination of the two plaintiffs in this case. According to her affidavit, she is prepared to testify to the opinions that both plaintiffs’ blood lead levels were within the normal range for children their age; that it cannot be said with any degree of medical certainty that the plaintiffs’ blood lead came from lead paint rather than other environmental sources of lead; and that the plaintiffs have not, and will not, experience any damage as a result of their measured blood lead levels. Neither in her affidavit nor anywhere else that I have located, does Dr. Sachs articulate the ground or grounds for these opinions. However, the plaintiffs assert — and the defendant does not deny— that Dr. Sachs would base her first and third opinion in whole or in part on her belief that children do not suffer long-term injury (particularly with respect to cognitive functioning) as a result of lead paint ingestion unless their blood lead levels are greater than 120 micrograms per deciliter (ug/dL) and they suffer encephalopathy.[2]
I have reviewed the materials submitted by the plaintiffs and the defendant in support of their respective positions on Dr. Sachs. The plaintiffs’ materials consist in part of excerpts from testimony by Dr. Sachs in other cases (at trial or in deposition), in which she states the opinion described above and related views, and in which she appears to agree that she knows of no practicing physician who shares this particular view of the threshold requirements for lead-based injury. The defendant’s materials consist in large part of affidavits by physicians and psychologists which were prepared for another case. In those affidavits, it is pointed out that Dr. Sachs was and is a pioneer in the field, and that her work forms part of the ongoing debate about the effects of lead on the neuropsychological development of children. These affidavits describe Dr. Sachs’ studies and contributions variously — as showing that high blood levels of lead do not always lead to low intelligence (Feinstein); that, absent encephalopathy, chelation therapy may ameliorate the toxic effects of lead poisoning (Smith); that “even high level lead exposure in early childhood where there are no clear physical signs of lead encephalopathy is compatible with successful and productive lives" (Sayre);[3] that her study on chelation therapy led the way for treatment still used today, her sibling study is significant in the field, and her experience is unique because in the present generation, it is highly unlikely that one will find the high blood lead levels which Dr. Sachs was finding in the 1960s and early 1970s (Schoen). With the possible exception of Dr. Sayre, who is conclusory at best, none of the affidavits indicates agreement with the proposition that children simply do not suffer any adverse consequences from ingestion of lead unless their blood lead levels are over 120 ug/dL and they exhibit encephalopathy.[4]
In sum, on this record I would follow the opinions of the two Housing Court judges and the opinion of the Maryland Court of Special Appeals submitted by the plaintiffs and would conclude that it has not been shown that “the tests and circumstances on which [Dr. Sachs’] opinion rests . . . provide a basis for concluding that [her] opinion is reliable.” Commonwealth v. Santoli, 424 Mass. 837, 845 (1997); Commonwealth v. Lanigan, 419 Mass. 15, 24-26 (1994). I add, however, that the record may not be a very good substitute for a voir dire of Dr. Sachs in person, and if the defendant wishes to pursue such a course I am open to it.
One final point. The defendant has offered Dr. Sachs as an expert witness, not as a fact witness. It is true that she examined both plaintiffs here. However, I agree with the plaintiffs that the factual observations she would be able to testify to concerning her examinations — which I assume were not exceptionally lengthy — on one occasion, in and of themselves, are of questionable relevance.
*280 ORDER
For the foregoing reasons, the plaintiffs’ motion to exclude the expert testimony of Dr. Henrietta Sachs is allowed without prejudice to the defendant’s presenting Dr. Sachs herself for a voir dire examination concerning her expected opinions and the bases for them.

There is absolutely nothing in this record to indicate what the basis of the second opinion — about the source of lead — is. Dr. Sachs does not appear on this record to be qualified to render the second opinion under any circumstances.

Dr. Sayre points out that he has done no studies himself, but appears to base his agreement with and support for Dr. Sachs on his personal experience as a physician.

Moreover, at issue in this case is whether low blood lead levels — a maximum of 31 and 27 ug/dL for Jonathon Salvodon and Diana Pierre, respectively — can and, in this case, did, cause adverse effects on cognitive development and functioning. I have read nothing in these materials to suggest that Dr. Sachs’ studies or work prepares her to offer scientifically reliable opinions on this issue; it appears that Dr. Sachs’ own experience and studies were with and of children exhibiting much, much higher levels of blood lead levels. I infer from the materials, perhaps incorrectly, Dr. Sachs’ opinion to be that since (in her view) children with far greater blood lead levels than the plaintiffs do not suffer deficits in cognitive functioning or neuropsychological development, it follows that these plaintiffs could not suffer any such deficits because, as a general rule, harm caused by lead to children increases as their blood lead levels increase. As indicated in the text above, the starting premise of this proposition is not well supported in the record before me, and I am not persuaded that in any event the general rule about increasing harm from increased blood lead levels is a sufficient, scientifically reliable basis to justify Dr. Sachs to give the opinion she apparently intends to give.