COMMONWEALTH *vs.* JAMES D. ORTON.

No. 01-P-1581.

Norfolk. February 7, 2003. - May 28, 2003.

Present: PORADA, KAPLAN, & COHEN, JJ.

*Robbery. Assault with Intent to Murder. Identification. Evidence,* Identification,
   Credibility of witness. *Witness,* Credibility. *Practice, Criminal,* Argument
   by prosecutor, Instructions to jury.

At a criminal trial, the judge erred in admitting testimony that vouched for the
   accuracy of the complainant's identification of the defendant as the
   perpetrator of the crimes at issue, but this error was not prejudicial, where
   the testimony was cumulative of evidence of the complainant's out-of-
   court and in-court identifications of the defendant. [211-212]

At a criminal trial, certain comments made by the prosecutor during closing
   argument misstated the evidence and were error; however, although the
   defendant seasonably objected and the error went to the heart of the
   defendant's case, the misstatements did not amount to prejudicial error,
   where the judge's instructions, to a certain extent, mitigated the harm, and
   where the misstatements, standing alone, did not make a difference in the
   outcome of the case. [212-214]

At a criminal trial, the judge erred in instructing the jury that the strength of
   the complainant's identification could be considered in determining whether
   the identification was a product of the complainant's own recollection, and
   the error was sufficiently significant in the context of the trial to make
   plausible an inference that the jury's verdicts might have been otherwise
   but for the error; therefore, this court set aside the verdicts. [214-215]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 28, 2000.

The cases were tried before *Ernest B. Murphy,* J.

*Eric Brandt,* Committee for Public Counsel Services, for the
defendant.

*Tracey A. Cusick,* Assistant District Attorney, for the
Commonwealth.

PORADA, J. In this appeal from his convictions of armed rob-
bery and armed assault with intent to murder a person over

sixty years old, the defendant claims that the judge erred in admitting testimony that vouched for the accuracy of the victim's identification of the defendant as the perpetrator of the crimes and in instructing the jury to consider the strength of the victim's identification. The defendant also claims that the prosecutor misstated the evidence two times in his closing argument and that those misstatements resulted in prejudicial error. We reverse.

As a backdrop for the analysis of the defendant's claims of error, we give a brief summary of the facts. The victim was the sole attendant at the Harborlight laundromat in Weymouth during the evening of February 11, 2000. While she was closing the laundromat, a man came to the door requesting to use a dryer for a jacket that he was holding. She allowed him to enter. The victim then entered the laundromat's private office to continue her closing tasks and was hit on the head with a hammer. The victim turned to face her assailant and recognized him as the man who had asked to use the dryer. The man then hit her in the face with the hammer; the victim dropped to the floor, and the man continued to strike her in the head and ribs. He then took money from the office safe and left.

A few minutes later, the victim called the police. She described her assailant as a clean-cut white male, about five feet ten inches or six feet tall, wearing a white sweatshirt and a baseball cap. The Weymouth police retrieved a white jacket from the dryer used by the man. The police also lifted fingerprints from the dryer door and a partial fingerprint from the cash register, none of which matched the defendant's fingerprints.

Three days after the incident, the victim met with a police officer to create a composite sketch of the assailant. A few days later, a police officer selected 107 images on a computer monitor that were similar to the victim's description of the assailant. While viewing the images on a computer monitor, the victim set aside five that resembled the assailant. The victim reacted emotionally when she selected the image of the defendant. The police then made an array of the five images selected by the victim. From that array of five images, the victim selected the

defendant as her assailant. The victim also made an in-court identification of the defendant.

We turn to the defendant's claims of error.

1. *Vouching testimony.* Over objection, a police officer, who had prepared a composite sketch of the perpetrator with the victim's assistance, was permitted to testify that the twenty to thirty minutes that it took for the victim to prepare the composite sketch was "within the time frame" or "within the parameters" with which the officer felt comfortable. This testimony followed the officer's explanation that "[i]f the first composite that comes up is chosen immediately it's felt that they did not see anyone, and they're just guessing. If it goes too long they're not sure exactly what they saw, and they're just changing things as they go along." While the officer did not expressly state that the victim's identification was reliable, his testimony implied that the victim got a good look at the perpetrator and was sure of what she saw. It is likely that the jury would have considered this testimony as an endorsement of the victim's credibility on the issue of identification. Cf. *Commonwealth* v. *Ianello*, 401 Mass. 197, 201-202 (1987) (where the defendant was charged with sexual assaults on his child, testimony from an expert witness that a child may falsely accuse a parent of sexual abuse because of the stress involved in an interspousal dispute over custody or visitation of the child was properly excluded as an opinion on the child's credibility); *Commonwealth* v. *Montanino*, 409 Mass. 500, 502-504 (1991) (police officer's testimony that most victims of sexual assaults eventually provide more details of the assault than they initially revealed viewed as an endorsement of the complainant's credibility).

Although it was error to allow this testimony, it was not prejudicial in and of itself. The officer's testimony was attenuated by the victim's testimony that she was not completely satisfied that the composite looked like the perpetrator. Moreover, "[t]he admission of cumulative evidence does not commonly constitute reversible error." *Commonwealth* v. *Bart B.*, 424 Mass. 911, 915 (1997). Here, the officer's testimony was simply cumulative of evidence of the victim's out-of-court identification of the defendant from an array of images

that had been printed from the computer and that was introduced as an exhibit, and her in-court identification of the defendant from which the fact finder could infer that she did, indeed, get a good look at her assailant and knew what he looked like. Cf. *Commonwealth* v. *Blaney,* 387 Mass. 628, 633 (1982) (no prejudice inured to the defendant from the introduction in evidence of a composite drawing prepared by the victim with the assistance of the police, where the evidence was merely cumulative of the victim's in-court identification of the defendant and the victim's out-of-court identification of the defendant from a photographic array).

2. *Prosecutor's closing argument.* The defendant argues that the prosecutor, in his closing argument, misstated the evidence two separate times. In one instance the prosecutor argued that the police officer who searched the crime scene for fingerprints did not find any that were usable. This statement contrasted with the officer's testimony that he had lifted a few fingerprints from the dryer door that had been opened by the perpetrator of the crime, but had found no usable fingerprints in the office area of the laundromat where the assault and robbery had taken place. Second, the prosecutor argued that the jacket that had been placed in the dryer by the perpetrator and had been sent to the State laboratory did not contain fiber or hair. There was no evidence presented during the trial that the jacket had been tested for hair or fiber, just for blood. Defense counsel objected to both misstatements and requested that the judge provide a specific instruction about them. The judge refused and, instead, stated that he would deal with the misstatements by a general instruction that closing arguments are not evidence, which he did give at the beginning of the closing arguments and during his instructions to the jury. The defendant objected to the failure of the judge to give the requested specific instruction.

We agree with the defendant that the prosecutor's challenged comments did misstate the evidence and, thus, amount to error. *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). The question then becomes whether the misstatements resulted in prejudicial error. In making this determination we consider "(1) whether the defendant seasonably objected; (2) whether the error was limited to col-

lateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." *Commonwealth* v. *Kater*, 432 Mass. 404, 422-423 (2000). In this case the defendant did object to the misstatements and the misstatements were directed to the heart of the defendant's case, namely, that the inadequate investigation cast doubt on the identity of the defendant as the perpetrator of the crime. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980) (failure to conduct certain tests or follow certain police procedures could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors).

To support the argument of an inadequate investigation, in her closing argument defense counsel stressed the failure of the Commonwealth to send the two fingerprints that were taken from the dryer to the State police for identification on its computer database, even though they did show sufficient detail for identification and did not belong to the defendant. Defense counsel also stressed that the police had failed to test the jacket for fingerprints. In view of the defendant's arguments, the prosecutor's misstatements that the police found no usable fingerprints at the crime scene and nothing on the jacket undermined the defense.

We must then consider whether the judge's instructions mitigated the harm and whether the remarks possibly made a difference in the outcome of the case. While the judge denied the defendant's request for a specific instruction about the prosecutor's challenged remarks, he did, prior to closing arguments, instruct the jury that closing arguments are not evidence. The judge reiterated that principle during his closing instructions. In his closing argument, the prosecutor told the jurors that their recollection of the evidence controlled. Although it would have been preferable if the judge's instructions had been more pointed, jurors are presumed to follow the instructions, and we presume that the judge's instructions did, to a certain extent, mitigate the error. *Commonwealth* v. *Maynard*, 436 Mass. 558, 571 (2002).

In the end, however, it becomes a question whether the mis-

statements may have made a difference in the outcome of the case. See *Commonwealth* v. *O'Brien*, 56 Mass. App. Ct. 170, 173-175 (2002). We do not think that the misstatements, standing alone, did so. The fingerprints that were usable were found on the dryer in a laundromat in a mall. The jury would have been aware that those prints could belong to anyone and that the likelihood that further testing of those prints would aid the police in their investigation was speculative. As for the tests conducted on the jacket, the State laboratory report was introduced as an exhibit and, thus, the jury could see from that report that the only test conducted was one for blood. In addition, these were not the only facts on which the defendant relied to establish that the investigation was inadequate. The defendant pointed to the failure to conduct fingerprint tests on the laundromat's outer door that the perpetrator, the last person to enter the laundromat before the crime, had opened with his hand, or to test the defendant's shoes for the victim's blood. Notwithstanding those other omissions in the police investigation, the jury by their verdict showed that inadequacies in the police investigation did not cast doubt on the defendant's guilt. Accordingly, we are of the opinion that the prosecutor's misstatements in and of themselves did not amount to prejudicial error.

3. *Judge's instructions.* In his closing instructions, the judge told the jury that the strength of the victim's identification could be considered in determining whether the identification was a product of the victim's own recollection. This instruction was repeated when the judge responded to a question from the jury. This instruction was requested by the defendant. The defendant now argues that it was error for the judge to give this instruction and that the error resulted in a substantial risk of a miscarriage of justice.

There is no question that giving this instruction constituted error. *Commonwealth* v. *Santoli*, 424 Mass. 837, 846 (1997). In *Santoli*, the Supreme Judicial Court stated that "the significance, if any, of a witness's confidence in an identification should be left to cross-examination and to argument of counsel and should not, in the normal course, be a subject of a jury instruction." *Ibid.* That the defendant had requested the instruction does not

foreclose our inquiry whether the instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Williams*, 428 Mass. 383, 385-389 (1998). *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 171-173 (2000). Here, the sole issue at trial was the identity of the perpetrator. The victim testified that there was no doubt in her mind that the defendant was the perpetrator of the crime. Other than evidence that the defendant lived in the neighborhood of the scene of the crime and fit the general description of the assailant given by the victim, there was no other evidence that could be considered as corroborative of the victim's identification of the defendant as the perpetrator. Accordingly, the accuracy of the victim's identification was the key to determining the defendant's guilt. However, as the Supreme Judicial Court noted in *Commonwealth* v. *Santoli*, 424 Mass. at 846, "there is significant doubt about whether there is any correlation between a witness's confidence in her identification and the accuracy of her recollection," and, thus, a jury should not be instructed to consider the strength of the victim's identification in determining identification. Because the jury were twice told to consider the strength of the victim's identification in a case where her identification was the key to determining the defendant's guilt, we are of the opinion that the error was sufficiently significant in the context of the trial to make plausible an inference that the jury's verdicts might have been otherwise but for the error. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

We also note that, although we have ruled that several of the claimed errors in and of themselves were not prejudicial, we lack fair assurance that the combined effect of the errors in this trial, all of which went directly to the disputed issue of identification, did not influence the jury verdicts and deprive the defendant of a fair trial.

*Judgments reversed.*

*Verdicts set aside.*