**Natale COSENZA, Petitioner**

v.

**John MARSHALL, Jr., Superintendent, MCI Cedar Junction Massachusetts Department of Corrections, Respondent.**

**Civil Action No. 07–10316–JLT.**

United States District Court,
D. Massachusetts.

Oct. 25, 2007.

Randall E. Ravitz, Office of the Attorney General, Boston, MA, for Respondent.

Chauncey B. Wood, Wood & Nathanson, LLP, Boston, MA, for Petitioner.

### ORDER

JOSEPH L. TAURO, District Judge.

This court ACCEPTS and ADOPTS the August 10, 2007, Report and Recommendation ("Report and Recommendation") of Magistrate Judge Alexander, and hereby orders that:

1. For the reasons set forth in the Report and Recommendation, the Petition for Writ of Habeas Corpus is DENIED.

2. This case is CLOSED.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS (Docket # 1 )

JOYCE LONDON ALEXANDER, United States Magistrate Judge.

On June 28, 2002 Petitioner Natale Cosenza ("Cosenza") was convicted by a jury in Worcester Superior Court on two counts of criminal conduct. The first count was Assault and Battery with a Dangerous Weapon (hereinafter, "ABDW"), the second was Armed Burglary. On the first count, ABDW, Cosenza was sentenced to serve nine to ten years imprisonment. On the second count, Armed Burglary, Cosenza was sentenced to serve twelve to twenty years imprisonment. The two sentences were set to run concurrently and Cosenza received credit for pretrial confinement of 352 days.

Cosenza filed a notice of appeal of his conviction on July 3, 2002. Additionally, on October 9, 2003, Cosenza filed a motion for a new trial in Worcester Superior Court. The motion for a new trial was based on the trial court's decision to exclude expert testimony concerning eyewitness identification, and ineffective assistance by counsel. An evidentiary hearing was held on both issues on June 14, 2004. On February 24, 2005, the trial judge denied the motion for a new trial by memorandum. On March 3, 2004, Cosenza filed a notice of appeal from the denial of the motion for a new trial.

The two appeals, of the conviction and of the denial of a new trial, were consolidated by the Massachusetts Appeals Court and oral argument was held on December 5, 2005. On April 5, 2006 the Massachusetts Appeals Court affirmed the jury conviction and upheld the denial of a new trial by the Worcester Superior Court.[1] Thereafter, Cosenza filed a timely appeal with the Massachusetts Supreme Judicial Court (hereinafter, "SJC"). On June 7, 2006, the SJC denied Cosenza's appeal and affirmed the judgment of the trial judge.[2]

Having exhausted his state law remedies, Cosenza petitioned this Court for a writ of habeas corpus on February 5, 2007 pursuant to 28 U.S.C. § 2254. On May 21, 2007 District Judge Tauro referred the case to this Court for a Report and Recommendation on disposition of this petition. For the reasons articulated below, this Court FINDS the trial court did not abuse its discretion in denying Cosenza's request for expert testimony concerning eyewitness identification and accordingly RECOMMENDS that the District Court DENY Cosenza's petition for writ of habeas corpus.

### Factual Background[3]

On August 14, 2000, the victim awoke around 4:00 A.M. to see a man standing in her bedroom. Realizing that she did not know the person she first asked, "Who are you?" and receiving no response asked, "What are you doing here?" The intruder did not answer and instead began to hit the victim over the head with an unidentified object. The victim covered her face with her hands as the assailant continued to hit her. The assailant then climbed into bed with the victim. The victim began to kick the intruder causing him to climb out

---

1. The judgment of the Massachusetts Appeals Court can be found at Commonwealth v. Cosenza, 65 Mass.App.Ct. 1127, 844 N.E.2d 720 (2006).

2. The judgment of the Supreme Judicial Court can be found at Commonwealth v. Co-senza, 447 Mass. 1102, 848 N.E.2d 1211 (2006).

3. This factual history is taken from the opinion issued by the Massachusetts Appeals Court, 65 Mass.App.Ct. 1127, 844 N.E.2d 720 (2006) as well as the trial transcript.

of bed. The intruder then left the apartment and the victim called the police.

The parking lot of the apartment was lit with large bright lights. The window in the victim's room faced the parking lot and the lights partially lit her room. This provided the victim some opportunity to see her assailant despite the early hour of the morning. Immediately after the incident, the victim called 911. When the police responded to the 911 call, the victim described the intruder as a white male of medium height and medium build. She said that the intruder had a "white object" covering a portion of his head, which the victim later identified as a white t-shirt. The intruder was also wearing a dark t-shirt and white brief style underwear. At trial, the victim testified that the intruder had dark hair, despite being unable to remember whether the intruder had any hair during the 911 call.

The police arrived at the victim's apartment shortly after she called 911. The police found the victim "hysterical," "visibly upset," and holding her swollen and bruised arm. When questioned, the victim told the police that she did not recognize the intruder. The following day, during further questioning, she clarified, saying that the intruder appeared familiar, but that she did not know him. Upon arrival, the police were unable to find any fingerprints belonging to the intruder. The police confirmed that all the doors and windows in the apartment were secure, except for the slider-window in the second bedroom[4] that overlooked the common balcony.

After speaking with the victim, the police canvassed the rest of the building and checked other neighboring apartments. One neighbor, Robert Payton ("Payton"), said that he had not heard anything that

evening. He told the police that he had seen Cosenza, who did not live in the apartment complex, spending a suspiciously large amount of time around the apartment building. Payton also relayed a story that his dirt-bike was stolen some time prior to the incident in question. Sometime later, Cosenza had approached Payton and stated that he knew where the dirt-bike was but that he wanted reward money for returning the bike. Cosenza returned the dirt-bike and collected the reward stating that he could, "really use the money." Payton also told the police that he had seen Cosenza hanging around the apartment complex.

After being released from the hospital, the victim did not return to her apartment, but instead went to stay with her niece in West Boylston, Massachusetts. The detectives assigned to the case, Detective Hazelhurst and Detective Doherty, met with the victim the next day, approximately thirty hours after the attack. They placed nine photographs in front of the victim and asked her if she recognized anyone. The victim began to shake and cry and pointed to a picture of Cosenza saying "that's the guy that was in my apartment."

After the victim made the identification, the detectives returned to the apartment complex. Detective Doherty spotted Cosenza and walked over to him yelling "police" and "we'd like to talk to you." Seeing the detectives, Cosenza got on his bicycle and sped away. The detectives returned to the apartment complex five or six more times but were unable to locate Cosenza. On August 29, 2000, Officer Watts spotted Cosenza, confirmed there were active warrants authorizing his arrest, and took him into custody.

---

4. The second bedroom was normally occupied by the victim's niece, who was not at the house on the evening of the incident.

■ As this habeas petition was filed after April 24, 1996, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").[5] *Woodford v. Garceau,* 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). AEDPA introduced many changes to the federal habeas statute,[6] requiring that there now be a "presumption of correctness of state court factual findings" and a new "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy,* 521 U.S. 320, 334 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *see also Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (state court decisions should be given the "benefit of the doubt"). Thus, after passage of the AEDPA, a federal court may not provide habeas relief to a state prisoner unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1); *O'Brien v. Dubois,* 145 F.3d 16, 24 (1st Cir.1998).

■ A state court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Mello v. DiPaulo,* 295 F.3d 137, 142–43 (1st Cir.2002).

■ A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal principle from the Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case." *Smiley v. Maloney,* 422 F.3d 17, 20 (1st Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. at 413, 120 S.Ct. 1495); *see also McCambridge v. Hall,* 303 F.3d 24, 33 (1st Cir. 2002) (en banc). It is not enough that the state court decision applied the federal law incorrectly; it must have been applied unreasonably, producing an unreasonable result. *See L'Abbe v. DiPaolo,* 311 F.3d 93, 96 (1st Cir.2002); *Williams v. Taylor,* 529 U.S. at 411, 120 S.Ct. 1495 (emphasizing Congress's use of the word "unreasonable" in AEDPA as opposed to "erroneously" or "incorrectly"). In order for the federal court to find the state court's decision unreasonable, "it must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Vieux v. Pepe,* 184 F.3d 59, 66 (1st Cir.1999) (quoting *O'Brien,* 145 F.3d at 25). The only issue raised by Cosenza in his petition is whether the trial judge erred in excluding expert testimony. The decision of whether to admit expert testimony concerning eyewitness identification is a matter of the trial court's discretion. *Commonwealth v. Zimmerman,* 441 Mass. 146, 804 N.E.2d 336, 342 (2004); *Commonwealth v. Ashley,* 427 Mass. 620, 694 N.E.2d 862, 866 (1998); *Commonwealth v. Santoli,* 424 Mass. 837, 680 N.E.2d 1116, 1119 (1997); *Commonwealth v. Francis,* 390 Mass. 89, 453 N.E.2d 1204, 1207, 1210 (1983). Exercising this discretion, most judges have excluded expert testimony concerning eyewitness identification, finding it to be within the realm of

5. Pub.L. No. 104–132, 110 Stat. 1214 (1996). 6. 28 U.S.C. § 2254.

common experience. *Ashley,* 694 N.E.2d at 866; *Santoli,* 680 N.E.2d. at 1118–19; *Francis,* 453 N.E.2d at 1210. Judges have emphasized the narrow scope of the holdings and fact specific situation in those few instances that they have found an abuse of discretion. *Santoli,* 680 N.E.2d. at 1119–20; *United States v. Downing,* 753 F.2d 1224, 1229 (3d Cir.1985) (emphasizing the broad discretion of the trial court in choosing whether to admit expert testimony).

There are several considerations in a trial judge's decision whether or not to admit expert testimony. "[T]he judge must conclude that the subject of the opinion is one on which jurors need assistance and can be helped, and will not be confused or misled by the expert's testimony." *Santoli,* 680 N.E.2d at 1120. The judge must feel confident that the opinion offered is reliable, that there is some data or literature to back up the expert's testimony. *Santoli,* 680 N.E.2d at 1120–21 (citing *Commonwealth v. Lanigan,* 419 Mass. 15, 641 N.E.2d 1342 (1994)). The judge must believe that the expert testimony will aid the jury in resolving the issue. *Santoli,* 680 N.E.2d at 1120; *Downing,* 753 F.2d at 1229 (quoting Fed.R.Evid. 702). A judge should also consider whether a standard jury instruction would be able to inform and educate the jury as well as expert witness testimony. *Santoli,* 680 N.E.2d at 1120–21 (citing *Commonwealth v. Hyatt,* 419 Mass. 815, 647 N.E.2d 1168 (1995)); *Francis,* 453 N.E.2d at 1208.

"Experts testifying on the reliability of eye witness identification may appear to be intruding into an area traditionally and exclusively the function of the jury." *Francis,* 453 N.E.2d at 1210. The "aura of the scientific credibility" that an expert witness brings to the stand may cause a jury to give too much weight to the testimony of an expert witness. *Id.* at n.8. Consequently, a trial judge must carefully weigh the competing interests before allowing expert testimony.

 In the instant case, Cosenza argues that expert testimony is necessary concerning the eyewitness identification made by the victim. Cosenza claims, incorrectly, that the case hinges *entirely* upon a single eyewitness identification by the victim. Although, the eyewitness identification is a strong piece of evidence, there is other circumstantial evidence helping establish Cosenza's motive and ability to gain access to the apartment complex. For instance, the apartment complex had a security door to keep out intruders. Payton testified that he had seen the defendant around the premises, providing a reason for the jury to believe Cosenza had access to the building despite the security door. Payton's testimony about Cosenza's need for the reward money provided the jury enough information to discern a possible motive for the burglary. The defendant's unwillingness to speak to police on the day after the incident also provided circumstantial evidence from which a juror could make the reasonable inference that the defendant had something to hide. *See Commonwealth v. Horsman,* 47 Mass.App.Ct. 262, 712 N.E.2d 1152, 1155 (1999) ("Flight from the scene of a crime may be considered evidence of consciousness of guilt.").

Cosenza's reliance on *Commonwealth v. Zimmerman* is misplaced. *See Zimmerman,* 441 Mass. 146, 804 N.E.2d 336 (2004). The issue in *Zimmerman* was whether the judge erred in denying the defendant's motion for funds to secure expert testimony. *Zimmerman,* 804 N.E.2d at 341–42. In the present case, the judge allocated funds so that the defendant could secure an expert witness. Only after funds were allocated did the judge rule on the admissibility of expert testimony concerning eye witness testimony. Additionally, *Zimmerman* addressed the issue of

cross-racial identification whereas the present case does not. *See Zimmerman,* 804 N.E.2d at 341–42.

The defendant's reliance on *Commonwealth v. Vardinski* is similarly misplaced. *See Vardinski,* 438 Mass. 444, 780 N.E.2d 1278 (2003). "The critical issue in [*Vardinski]* is whether the defendant's constitutional and statutory rights to present a defense and to *cross-examine witnesses* were impermissibly limited." *Vardinski,* 780 N.E.2d at 1282 (emphasis added). The trial judge used his discretion in *Vardinski* to limit defense counsel's cross-examination of the victim. In the present case, defense counsel was given a full opportunity to cross-examine the victim. On appeal, the court in *Vardinski* noted that the ability to cross-examine an eyewitness is particularly crucial where the eyewitness has had no previous contact with the perpetrator. *Vardinski,* 780 N.E.2d at 1285 ("eyewitness identification of a person whom the witness had never seen before the crime or other incident presents a substantial risk of misidentification and increases the chance of a conviction of an innocent defendant") (internal citations omitted). Not only does *Vardinski* address a different issue, the instant case is factually distinguishable from *Vardinski.* *See Vardinski,* 780 N.E.2d at 1282. In the present case, the victim stated that the intruder seemed familiar and that she had seen the defendant around the apartment complex prior to the incident.

Cosenza argues that the victim's identification may be inaccurate due to the poor lighting during the incident. The incident took place around 4:00 A.M., the victim's lights were turned off, and the blinds were partially closed. The defendant's emphasis on these facts misinterprets the issue on appeal concerning the admissibility of expert testimony. Expert testimony may be admissible when it is outside the realm of common sense and everyday experience, when it is something a jury would not be able to fully understand without the help of an expert. The early hour and poor lighting may have made it difficult for the victim to see the perpetrator, but those factors do not make it difficult for the jury to understand the effect of poor lighting. *United States v. Rodriguez–Berrios,* 445 F.Supp.2d. 190, 194 (D.P.R.2006) ("[g]rasping and weighing the effects of lighting ... is not the kind of issue that the jurors would be unqualified or unable to determine 'without enlightenment from those having specialized understanding of the subject involved in the dispute'") (quoting Fed.R.Evid. 702). *See Commonwealth v. Rodriguez,* 378 Mass. 296, 391 N.E.2d 889, 898 (1979). A dark room does not necessitate the testimony of an expert witness.

Cosenza's claim also emphasizes the victim's inability to make an accurate identification based on the level of stress and adrenaline. Again, the defendant misinterprets the standard that must be met in order to engage expert testimony. The level of stress of the victim may have made it difficult for the victim to identify the intruder. However, the rise in the level of stress is within the realm of common knowledge. A jury would not need the testimony of an expert to understand that a stressful situation may make it harder to appropriately identify the intruder. *Rodriguez–Berrios,* 445 F.Supp.2d at 194.

The decision to permit the testimony of an expert witness is well-established as a matter of judicial discretion on the part of the trial judge. *Zimmerman,* 804 N.E.2d at 342; *Ashley,* 694 N.E.2d at 866; *Santoli,* 680 N.E.2d at 1119; *Francis,* 453 N.E.2d. at 1207, 1210. As an exercise of this discretion, a trial judge should consider whether there is an adequate jury instruction that can adequately educate and instruct the jury. In the present case, the judge used a standard *Rodriguez* jury in-

struction. *See Rodriguez*, 378 Mass. 296, 391 N.E.2d at 898 (1979) (setting forth the entire jury instruction used in the instant case). Neither party claims this instruction was inadequate or incorrect. During the course of a *Rodriguez* instruction, the judge states several times that the Government has the burden of proving the identity of the perpetrator beyond a reasonable doubt. *Rodriguez*, 378 Mass. 296, 391 N.E.2d at 898. The jury instruction lists several factors that could influence the witness' ability to adequately observe the offender; "how long or short a time was available [to observe the offender], how far or close the witness was, how good lighting conditions [were], whether the witness had had occasion to see or know the person in the past." *Rodriguez*, 378 Mass. 296, 391 N.E.2d at 898. The jury charge concludes by requiring that if the jurors "have a reasonable doubt as to the accuracy of the identification, [they] must find the defendant not guilty." *Rodriguez*, 378 Mass. 296, 391 N.E.2d at 898. The jury instruction was sufficient in making the jury aware of the possible weaknesses in eyewitness identification. The judge acted appropriately and within his discretion when he denied the admissibility of the expert witness concerning eyewitness identification.

## Conclusion

Accordingly, for the reasons articulated above, the Court FINDS that the trial court did not err is denying Cosenza's request for expert testimony concerning eyewitness identification, therefore this Court RECOMMENDS that the District Court DENY Cosenza's petition for writ of habeas corpus.

SO ORDERED.